GREEN, J.
delivered the opinion of the court.
The defendant is executor of Nathaniel Perry, deceased, the father of complainant. And the only matter of dispute in the cause is, whether he is chargeable with .negligence for failing to collect a note of fourteen hundred dollars, due the estate from David Armour & Cromwell.
Nathaniel Perry died in the spring of 1838, and David Armour & Cromwell were solvent and the note could have been collected at any time until the spring of 1840.
It is admitted that the failure to collect this note for so long a time, would have been culpable negligence on the part of the executor, and would have rendered him personally liable for the money, but for the complainant’s interference, and his acquiescence in the forbearance of the executor.
It appears that David Armour & Cromwell were merchants in Jackson, of high standing, and were greatly respected by the testator and his son, the complainant. The money due on the note, had been loaned to Armour by the testator, who desired it to remain in Armour’s hands until it was needed, and the note had been executed a short time before the testator’s death, through the agency of the complainant, and a memorandum was placed on the note, that if the money should not be called for in twelve months, the obligors were to pay eight per cent, interest. The note was in the hands of the complainant when the testator died, and he continued to retain it, with the permission of the executor, until a short time before the failure of D. Armour & Cromwell.
In the fall of 1839, Jones, one of the legatees, who lived in North Carolina, came to Tennessee for his share of the residue of the estate. Armour was notified by the executor of Jones’ intended visit, and was informed that he wished to settle up with the legatees.
To enable the executor to settle with Jones, Armour paid *527 about three hundred dollars on his note, and not finding it convenient to raise the balance, he applied to the executor for further indulgence, who referred him to the legatees. Armour applied to the complainant, who was the principal legatee, who told him, “he did not .particularly need the money, and as for himself he was willing to wait.” The complainant also said he was willing to take a note on David Armour & Cromwell for his part.
This conversation was communicated to the executor, who made no further effort to collect the money; and the house of D. Armour & Cromwell soon afterwards failed, whereby the .debt has been wholly lost to the estate.
The question upon these facts is, whether the defendant was guilty of negligence, in failing to collect this money for the two years within which the debtors were solvent, after it was due.
Unquestionably an executor is bound to use diligence in discharge of his duties, and not to permit the estate to be injured through his neglect. 2 Williams Ex’rs, 1111 and 1112. And if there were no fact in this case to excuse the defendant, he would certainly be liable for the money which has been lost by the insolvency of these debtors to the estate. But under all the circumstances, we think he was excusable for the delay.
The complainant told Armour at the time the note was given he wished the money to remain in his hands until it was needed. All parties had the most unbounded confidence in the solvency of D. Armour & Cromwell, and the testator and his legatees seem to have entertained great respect and kindness for David Armour. All parties felt that the money was entirely safe in Armour’s hands, and the complainant, as well as his father, doubtless desired it to remain there until it was needed.
There seems to have been a constant communication and friendly understanding between the executor and the complainant upon the subject. Hence the complainant retained possession of the note more than a year after the defendant qualified as executor, and when the debtor desired further indulgence, he was referred to the legatees (of whom the complainant was the principal legatee) to obtain their consent. When, at last, Jones came to this country for his legacy, and the executor *528 wished to settle up the estate, the complainant told Armour he did not need his money, and was willing to wait, and take the note of D. Armour & Cromwell for his share. These dispositions of the complainant towards Mr. Armour, manifested so late as the winter of 1839, are satisfactory proof, that he bad all along approved the delay of the executor to collect the note. The testator owed no debts, and the executor had no use for the money, but to pay off the legacies. Had he collected it, the interest would have ceased, and the parties entitled to the fund, would have failed to realize the 8 per cent, interest Armour had promised to give, and would have deemed their money in hands no more safe, than in those of the debtors. They, therefore, did not wish the executor to collect it, and with this feeling on their part, he was well acquainted.
In this view of the case, the defendant cannot be regarded as culpably negligent for failing to do that which he knew those who were interested in the fund desired him to refrain from doing.
Much stress is laid upon the fact, that the defendant said, after the failure of D. Armour & Cromwell, that he had rendered himself liable for the debt. His opinion, that he was liable, would not change the facts, nor constitute a liability which the law did not raise upon those facts.
The complainant is entitled to a decree for one-half the sum in the defendant’s hands, according to his settlement with the County Court, excluding the note on D. Armour & Cromwell, and each party will pay half the cost.